**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**OWNER-OPERATED INDEPENDENT DRIVERS ASSOCIATION, *et al.*,**

**Plaintiffs,**

**vs.**

**PACIFIC FINANCIAL ASSOCIATION, Inc., *et al.*,**

**Defendants.**

**2:13-cv-00373 JWS**

**ORDER AND OPINION**

**[Re: Motion at Docket 8]**

## I. MOTION PRESENTED

At docket 8 plaintiffs Owner-Operator Independent Drivers Association ("OOIDA"), Thomas and Karen Moore d/b/a Tom Moore Transportation, Jasmine, LLC, and K&S Trucking LLC (collectively "plaintiffs") move to remand this case to the Arizona Superior Court, Maricopa County pursuant to 28 U.S.C. § 1447(c), arguing that there is no federal jurisdiction to support removal, and request attorneys' fees associated with the removal. Defendants Pacific Financial Association, Inc. ("Pacific") and its agent, Federal Service Corporation ("FSC"; collectively, "defendants") respond at docket 18. Plaintiffs reply at docket 19. Oral argument was requested, but the motion has been thoroughly briefed, and oral argument would not be of further assistance to the court.

## II. BACKGROUND

The plaintiffs are motor carriers or shippers who hauled freight pursuant to contractual agreements they had with a transportation broker, Alliance Transportation, Inc. ("Alliance"), which is not a party to this action. All such brokers must be registered with the Department of Transportation pursuant to 49 U.S.C. § 13901. In order to be registered as a broker for transportation, under 49 U.S.C. § 13906, the person must file "a bond, insurance policy, or other type of security approved by the Secretary [of Transportation] to ensure that the transportation for which a broker arranges is provided."[1] Alliance elected to provide the federally required security by way of a trust agreement with Pacific. In compliance with the regulations implementing the statute, the trust agreement provided for a $10,000 fund ("Trust") provided by Alliance to Pacific as the trustee and was filed on a prescribed form, Form BMC-85 ("Trust Agreement").[2] The Trust is intended to "ensure the financial responsibility of the broker by providing for payments to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers."[3]

The plaintiffs filed a class action complaint in Arizona Superior Court in Maricopa County against Pacific under state law for breach of fiduciary duty generally, for breach of fiduciary duty for failure to inform, for breach of the duty of good faith and fair dealing, for negligence, and for breach of fiduciary duty for the misallocation of trust assets. They raised state claims against Pacific's agent, FSC, for breach of fiduciary duty related to the misallocation of trust assets, for negligence, and for aiding and abetting tortious conduct. They brought a declaratory judgment claim as well, asking

---

[1] 49 U.S.C. § 13906(b).

[2] 49 C.F.R. § 387.307(b), (d) (requiring that the evidence of a trust fund be filed using Form BMC-85).

[3] 49 C.F.R. § 387.307(b).

the state court to determine that Pacific was engaged in the “trust business” as defined by state law.

The complaint alleges that starting in the fall of 2011, Alliance ceased paying motor carriers for their transportation services, and that these motor carriers began filing claims against the Trust. It alleges that by October 19, 2011, the aggregate of unpaid claims against the Trust premised upon deliveries before such date exceeded $10,000, and that, therefore, the Trust ceased to be effective. It alleges that Pacific knew this to be the case, but failed to notify any Trust beneficiaries, failed to take steps to trigger Alliance’s duty under the Trust Agreement to replenish the Trust, or provide notice to the Federal Motor Carrier Safety Administration (“FMCSA”) about Alliance’s delinquency as was required under the Trust Agreement. It alleges that the plaintiffs thereafter hauled freight for Alliance pursuant to contracts without knowing that their contracts were not secured by the Trust. The complaint alleges that plaintiffs were not paid for their services and ultimately filed claims against the Trust for payment, which were also never paid. It further alleges that Pacific did not pay any claims until after the Trust was cancelled and that Pacific then chose to pay claimants based on chronological order of delivery, meaning the Trust did not have any funds remaining to pay plaintiffs, who had claims for deliveries after October of 2011.

Defendants removed the case to federal court. In the removal notice defendants state that plaintiffs’ claims depend upon 49 U.S.C. § 13906, 49 C.F.R. § 387.307, and the federally prescribed Form BMC-85. Thus, they assert that the court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331 for federal question jurisdiction and pursuant to 28 U.S.C. § 1337(a) for jurisdiction over an act of Congress that regulates commerce. Plaintiffs now seek to remand.

## III. STANDARD OF REVIEW

Federal courts strictly construe the removal statute against removal jurisdiction.[4] There is a strong presumption against removal and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[5] The party seeking removal bears the burden of establishing federal jurisdiction.[6]

## IV. DISCUSSION

Defendants assert that this court has jurisdiction over the case pursuant to 28 U.S.C. § 1331, which confers jurisdiction over cases "arising under" the Constitution or law of the United States, and pursuant to 28 U.S.C. § 1337, which confers federal jurisdiction over cases "arising under" federal statutes regulating commerce. The "arising under" language of § 1337 is interpreted in the same manner as the "arising under" language of § 1331, and it is therefore proper to apply the principles of general federal-question jurisdiction to determine whether this court has jurisdiction over the case as defendants contend.[7] Under federal-question jurisdiction principles, the court has jurisdiction over cases where federal law creates the cause of action.[8] It also has jurisdiction over cases where state law creates the cause of action when state law nonetheless requires resolution of a disputed and substantial question of federal law

---

[4] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

[5] *Id.*

[6] *Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999), *superceding by statute on other grounds as explained in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

[7] *See Garrett v. Time-D.C., Inc.*, 502 F.2d 627, 629 (9th Cir. 1974) ("[T]he 'arising under' language in 1337 is interpreted in essentially the same way as the 'arising under' phrase in 1331.").

[8] *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312.

and as long as entertaining the action in a federal forum will not disturb "any congressionally approved balance of federal and state judicial responsibilities."[9]

**A. Federal cause of action**

The question of whether a claim arises under federal law must be determined by reference to the complaint.[10] All of plaintiffs' counts allege causes of action arising under Arizona statutory or common law based on defendants' conduct as trustee. Defendants argue that although plaintiffs' claims are directed at them as the trustee and framed in terms of Arizona state law, plaintiffs actually seek to recover the amounts owed to them by the broker, Alliance, pursuant to the Trust Agreement, which is a federal form and thus governed by the relevant federal statutes. Defendants argue that plaintiffs could have brought a federal claim against the broker, Alliance, under 49 U.S.C. § 14707(a) for failure to comply with 49 U.S.C. § 13906, and therefore this case is one rooted in federal law. However, even assuming defendants are right about § 14707(a), the fact that plaintiffs could have brought a federal claim does not mean federal law creates the cause of action. A plaintiff is the "master of his complaint" and "where he may pursue state and federal claims, he is free to pursue either or both, so long as fraud is not involved."[11] Plaintiffs did not opt to bring a claim against the broker for failure to comply with federal law. Instead, they chose to bring a claim against the trustee based on a state law theory—that the trustee breached its fiduciary duties and was negligent in its execution of its duties under the Trust Agreement. "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not

---

[9]*Id.* at 314.

[10]*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983).

[11]*Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990).

attach because federal law is not a necessary element of the claim."[12] Therefore, federal law does not create the cause of action against Defendants.[13]

**B. Substantial question of federal law**

Defendants argue that federal jurisdiction exists because even if plaintiffs' cause of action arises from state law, their right to relief requires resolution of an essential, substantial question of federal law. They point out that the Trust Agreement is actually controlled by the provisions set forth in 49 U.S.C. § 13906[14] and 49 C.F.R. § 387.307.[15]

The case certainly involves issues of federal law. Federal law requires that a transportation broker such as Alliance be federally registered and, pursuant to 49 U.S.C. § 13906, registration requires that a broker file a bond or evidence of other security, such as a trust, to ensure that the transportation for which a broker arranges is provided. The Trust Agreement is thus a means to comply with federal law, and moreover, the Trust Agreement itself is actually a federal form, Form BMC-85. Form BMC-85 is the form a broker must use pursuant to 49 C.F.R. § 387.307 as evidence of the required trust. However, despite the interplay of federal law in relation to the Trust

---

[12]*Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

[13]*Ultramar America*, 900 F.2d at 1414 ("Whether the complaint states a claim 'arising under' federal law must be ascertained by the legal construction of [the plaintiff's] allegations, and not by the effect attributed to those allegations by the adverse party." (internal quotations omitted)).

[14]49 U.S.C. §13906(b) provides: "(b) Broker requirements.--The Secretary may register a person as a broker under section 13904 only if the person files with the Secretary a bond, insurance policy, or other type of security approved by the Secretary to ensure that the transportation for which a broker arranges is provided. The registration remains in effect only as long as the broker continues to satisfy the security requirements of this subsection."

[15]49 C.F.R. § 387.307 provides: "(a) Security. (1) A property broker must have a surety bond or trust fund in effect for $10,000. The FMCSA will not issue a property broker license until a surety bond or trust fund for the full limits of liability prescribed herein is in effect. The broker license shall remain valid or effective only as long as a surety bond or trust fund remains in effect and shall ensure the financial responsibility of the broker."

Agreement, the court concludes that federal issues are not substantial to the resolution of the case.

First, the terms of the Trust Agreement (Form BMC-85) indicate that the agreement is governed by state law to the extent that state law is not inconsistent with the applicable federal rules and regulations.[16] The only federal regulation applicable to the Trust Agreement is 49 C.F.R. § 387.307. It requires that the trust be in the amount of $10,000 and states that the broker's license is only valid as long as the trust fund remains in effect and ensures the broker's financial responsibility.[17] It also requires that the trust agreement "ensure the financial responsibility of the broker by providing for payments to shippers or motor carriers if the broker fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers."[18] It does not set forth the duties of the trustee or discuss the requirements of parties seeking to recover from the trust. Thus, federal law is not inconsistent, and by its own terms the Trust Agreement is governed by state law.

Second, contrary to defendants' assertion, there is no federal private right of action for plaintiffs' claims against them as trustees under 49 U.S.C. § 14707(a). The existence of a federal private right of action for a plaintiff's claims is a sufficient indication that there are substantial federal issues at stake and that Congress intended those issues to be within the scope of federal jurisdiction.[15] Here, there is no such congressional intent. Section 14707(a) provides for private right of action to enforce a broker's compliance with the registration requirements of § 13906, but that does not suggest that Congress intended to provide carriers with a federal cause of action against trustees to recover delinquent shipping charges from a broker's trust. While the

---

[16]Doc. 18-1 at p. 3, ¶12.

[17]49 C.F.R. §387.307(a)(1).

[18]49 C.F.R. §387.307(b).

[15]*Grable,* 545 U.S. at 317.

lack of a federal cause of action does not foreclose jurisdiction, it is relevant to the jurisdictional analysis and suggests that Congress did not intend such actions to fall within the realm of federal jurisdiction.[16] This, coupled with the fact that the Trust Agreement is to be construed pursuant to the laws of Arizona by its very terms, causes the court to conclude that this dispute over a trustee's fiduciary duties is squarely within the realm of state law and does not involve substantial federal questions.

Defendants argue that even if there is not a federal private right of action, the Sixth Circuit's decision in *Milan Express Co., Inc. v. Western Surety Co.*[17] is persuasive and demonstrates how disputes related to a security instrument required by § 13906 invoke federal jurisdiction. *Milan* involved a dispute between a motor carrier and the sureties of brokers regarding the proceeds of surety bonds created on a federal form (Form BMC-84), administered under federal regulations, and required by federal statute. The Sixth Circuit stated, "The historical federal interest in the regulation of interstate commerce persuades us that plaintiffs' claims for recovery under the bonds, which are clearly creatures of federal law, should . . . be heard in a federal forum that possesses substantial expertise in matters of interstate commerce."[18] *Milan*, however, is distinguishable. First, *Milan* involved surety bonds, not trust agreements, and therefore Form BMC-84, not BMC-85, was at issue. Form BMC-85 explicitly states that the agreement shall be governed by state law: Form BMC-84 does not. Moreover, *Milan* involved the failure of a surety to make payment on a bond, and this case involves the more complex issue of a trustee's fiduciary duties related to the management and supervision of a trust, duties not outlined in the applicable federal statutes and regulations, but instead addressed in Arizona statutory and common law.

---

[16]*Id.* at 317-18 (clarifying that while a federal cause of action is a sufficient condition for federal question jurisdiction, it is not a necessary one).

[17]886 F.2d 783 (6th Cir. 1989).

[18]*Milan*, 886 F.2d at 787.

**C. Judicial estoppel**

Defendants argue that plaintiff OOIDA should be judicially estopped from arguing that the court does not have jurisdiction.[19] They cite and provide a copy of a case filed by OOIDA in the United States District Court for the Middle District of Florida wherein OOIDA recognized that federal jurisdiction exists over claims involving "activities of transportation brokers engaged in the interstate transportation of property by motor carriers."[20] In the Florida case, OOIDA brought an action against a broker for violation of 49 C.F.R. § 317.9(a). Here, in contrast, OOIDA is suing a trustee under state law, not a broker under a federal regulation. Thus, OOIDA is not taking an inconsistent position which might warrant judicial estoppel.

**D. Attorneys' fees**

Plaintiffs request attorneys' fees pursuant to 28 U.S.C. § 1447(c), which states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." This court concludes that, while ultimately not successful, defendants' removal was objectively reasonable.[21] It was not clearly foreclosed based upon the Sixth Circuit's holding in *Milan*, and nothing in the record suggests that removal was for an improper purpose, such as imposing costs on plaintiffs or prolonging litigation.[14] Thus, attorneys' fees are not warranted.

---

[19]Doc. 18 at p.2, n.1.

[20]Doc. 18-2 at p. 3, ¶ 4.

[21]*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005);

[14]*Id.* at 140-41.

## V. CONCLUSION

Based on the preceding discussion, plaintiffs' motion to remand at docket 8 is GRANTED. The case is remanded to the Superior Court of the State of Arizona, Maricopa County.

DATED this 18th day of July 2013.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE